UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERESA LYNN GODDARD, | ) |
| | ) |
| **PLAINTIFF,** | ) |
| | ) |
| vs. | ) CASE NO. 13-CV-190-FHM |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| **DEFENDANT.** | ) |

## OPINION AND ORDER

Plaintiff, Teresa Lynn Goddard, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017 (10th

---

[1] Plaintiff Teresa Lynn Goddard's application was denied initially and upon reconsideration. A hearing before Administrative Law Judge (ALJ) Gene M. Kelly was held August 16, 2011. By decision dated September 16, 2011, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on January 31, 2013. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

1

Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was 37 years old on the alleged date of onset of disability and 41 years old on the date of the ALJ's denial decision. She has a 12th grade education and previously worked as a car hop, fast food worker, and receptionist. Plaintiff claims to have been unable to work since November 1, 2008, due to bipolar disorder. [R. 147].

## The ALJ's Decision

The ALJ determined that the Plaintiff has a severe impairment relating to depression, anxiety, bipolar disorder, organic mental disorder, and substance abuse. [R. 15]. The ALJ further determined that Plaintiff has the residual functional capacity to perform light[2] and

---

[2] Pursuant to CFR § 404.1567, light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

sedentary[3] work. Plaintiff has these additional limitations. She has a poor ability to read, write, and use numbers. She is able to lift 20 pounds; stand and/or walk (with normal breaks) 6 hours in an 8-hour workday, sit (with normal breaks) 6 hours in an 8-hour workday, slight limitation in bending and stooping, slight limitation between continuous and frequent in fingering, feeling, and gripping, should not do extensive small tedious tasks with hands and fingers, occasional climb, squat, kneel, crouch, crawl, and reach overhead, and avoid dust, fumes, gases, and cold. Work should be kept simple, repetitive, and routine, limiting stress and content, and limited contact with the public, co-workers, and supervisors. If Plaintiff is to work on an assembly line, there should be ample room between her and any other co-worker, so she will not have to carry on any social interaction. Plaintiff can attend shift and team meetings and things of that nature, but she should be working alone or in very limited contact with other people. Plaintiff is afflicted with symptomatology from a variety of sources that produces mild to moderate to chronic pain sufficiently severe as to be noticeable to her at all times, but she will remain reasonably alert to perform work functions in the work setting. She takes medication for the relief of that symptomatology, but the medications will not preclude work at the light and sedentary levels, and she will remain reasonably alert to perform required work functions in the work setting. Plaintiff will find it necessary to alter positions from time to time to relieve the symptomatology. [R. 17].

---

[3] Sedentary work involves lifting no more than 10 pounds at a time, no more than 2 hours of walking and standing a day, and 6 hours of sitting a day. Social Security Ruling (SSR) 83-10: *see* 20 C.F.R. §§ 404.1567(a), 416.967(a)(2012).

Although Plaintiff was unable to perform her past relevant work and her ability to perform work at all exertional levels is limited, based on the testimony of the vocational expert, the ALJ found that there are a significant number of jobs in the national economy that Plaintiff could perform with these limitations. [R. 23-24]. Therefore, the ALJ found that the Plaintiff was not disabled. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

### **Plaintiff's Allegations**

Plaintiff asserts that: 1) the ALJ failed to perform a proper credibility determination; 2) the RFC is not supported by substantial evidence; and 3) the ALJ failed to perform a proper step five determination.

### **Analysis**

#### Credibility Determination

In answer to Plaintiff's assertion that the ALJ failed to perform an adequate credibility analysis, the Commissioner admits that the ALJ's analysis is not a model of clarity and must be teased from the decision. The court finds that the ALJ failed to perform an adequate credibility analysis. In this case the ALJ did not provide a "narrative discussion" that "contain[s] specific reasons for the finding . . . , supported by the evidence in the case record"; the decision was not "sufficiently specific to make clear . . . the weight the adjudicator gave to the individual's statements and the reasons for that weight," as he is required to do. See *SSR* 96-7p, 1996 WL 374186, *2; *SSR* 96-8p, 1996 WL 374184, at *7. The decision contains only a conclusory boilerplate statement concerning Plaintiff's

4

credibility, [R.19], which does not actually contain any analysis or any reference to the facts of the case.

A credibility evaluation must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations. *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990), Social Security Ruling (SSR) 96-7p, 1996 WL 374186 (July 2, 1996). Further, an ALJ's findings with respect to a claimant's credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)(quotation omitted). Here, the ALJ stated a conclusion, leaving it to the court to pick out of the summary what evidence might support the credibility finding. This technique falls short of the requirements of the Commissioner's regulations and case law. The decision must therefore be reversed and the case remanded for the ALJ to provide a reasoned credibility determination.

## RFC Determination

In the hypothetical question posed to the vocational expert and in the RFC, the ALJ included the requirement that Plaintiff will find it necessary to alter her position from time to time to relieve symptomatology. [R. 17, 56]. Plaintiff argues that the ALJ's failure to specify the frequency of her need to "alter positions from time to time" in the RFC assessment and the hypothetical question was error. In support of her argument, Plaintiff refers to *SSR* 96-9p which explains the Social Security Administration's policies regarding the impact of a RFC assessment for less than a full range of sedentary work. On the issue of alternating sitting and standing, it states:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by

5

> scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

SSR 96-9p, 1996 WL 374185 at *7. In this case Plaintiff was not limited to sedentary work. Rather, the ALJ's RFC determination included light work. As a result, *SSR* 96-9p is not applicable to this case.

The ALJ made a specific findings as to Plaintiff's ability to sit, stand, or walk – "Plaintiff is capable to stand and/or walk (with normal breaks) 6 hours in an 8-hour workday, and sit (with normal breaks) 6 hours in an 8-hour workday." [R. 17]. The ALJ properly consulted a vocational expert to determine the effect of the need to alter positions from time to time on the vocational base. Further, Plaintiff has failed to point to record evidence which demonstrates a more specific formulation is required. The court finds that the ALJ did not err by failing to specify the frequency with which Plaintiff needs to alter positions.

Plaintiff also argues that the ALJ failed to consider the opinion of agency clerk, J. Grauer, as a "third party source" pursuant to 20 C.F.R. §§ 404.1529(c)(1) and (3), 416.929(c)(1) and (3) and 416.929(a), 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3), *SSR* 96-8p, *SSR* 96-7p and *SSR* 85-16, and 20 C.F.R. §§ 404.1513(d), 416.913(d). [Dkt. 16, p. 8; Dkt. 20, p. 2]. On October 29, 2009, agency clerk J. Grauer conducted a telephone interview of Plaintiff who observed:

> I did the interview with Teresa but she really struggled talking to me. Her mother was in the room with her and she would get angry at her Mother and start aruging (sic) with her, I had to redirect her back to me. I spoke with her Mother about the 827 and I could hear Teresa in the back ground say she didn't do a good job and I had to have her get back on the telephone to tell her she did do fine.

[R. 144]. The Tenth Circuit has made it clear that an ALJ is not required to make specific, written findings regarding each lay opinion when the written decision indicates that the ALJ considered that opinion. *Blea v. Barnhart,* 466 F.3d 903, 914-15 (10th Cir. 1996). The regulations provide that the agency "will consider all of the evidence presented, including . . . observations by our employees." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *SSR* 96-7p states that "[i]n evaluating the credibility of the individual's statements, the adjudicator must also consider any observations recorded by SSA personnel who have previously interviewed the individual, whether in person, or by telephone." Finally, *SSR* 85-16 instructs that "[d]escriptions and observations of the individual's restrictions by . . . sources (including Social Security Administration representatives, such as district office representatives and ALJ's) . . . must also be considered in the determination of RFC."

The one time contact with the agency clerk does not contain any opinions that were significantly probative nor did it provide significant evidence supporting disability. Moreover, the ALJ is not required to discuss every piece of evidence in the record. *Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004). The ALJ stated he carefully considered the entire record. [R. 13, 17]. The Tenth Circuit has stated it will take the ALJ at his word when the entirety of the ALJ's discussion of the evidence and the reasons for his conclusions demonstrate that he adequately considered the claimant's impairments. *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009). The court finds that the ALJ's decision

demonstrates he adequately considered the evidence.

## Step Five Determination

Plaintiff argues that because the ALJ's RFC determination included a need to "alter positions from time to time," she would be precluded from performing the two unskilled jobs identified by the vocational expert – bench assembler (light) and semiconductor assembler (sedentary). Plaintiff contends that those jobs conflict with *SSR* 83-12 and the *Dictionary of Occupational Titles* (4th ed., 1991)(DOT). *SSR* 83-12 discusses the use of the medical-vocational rules as a framework for adjudicating claims in which an individual has only exertional limitations within a range of work or between ranges of work. [Dkt. 16, p. 9]. The Commissioner contends that *SSR* 83-12 supports, rather than undermines the ALJ's decision. [Dkt. 19, p. 7]. The need to alternate between sitting and standing covered by *SSR* 83-12 states as follows:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. **(Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)** There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a

> worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. **In cases of unusual limitation of ability to sit or stand, a VS [vocational specialist] should be consulted to clarify the implications for the occupational base**.

SSR 83-12, 1983 WL 31253 at *4. (Emphasis added).

The court finds no conflict between *SSR* 83-12 and the ALJ's findings.. The ALJ found Plaintiff could sit, stand and/or walk for 6 hours in an 8-hour workday with **normal breaks**. Further, the ALJ consulted the vocational expert. The hypothetical question contained all the limitations found by the ALJ, including a need to change positions from time to time. Based on all the limitations listed by the ALJ in his hypothetical question, the vocational expert testified that Plaintiff could perform the jobs of bench assembler and semiconductor assembler. The vocational expert said there were a total of 40,000 light bench assembly jobs regionally and a total of 600,000 nationally. He also testified that there were 80,000 nationally and 6,000 regionally sedentary semiconductor assembler jobs in the national economy that would accommodate all Plaintiff's limitations, including her need to change position from time to time. [R. 54-55].

The court finds that the hypotheticals posed to the vocational expert were not deficient. The ALJ's RFC assessment and the hypotheticals posed to the vocational expert are supported by substantial evidence in the record. The ALJ's reliance on the vocational expert's testimony was proper.

Plaintiff also contends that she is unable to perform the job of bench assembler (DOT 706.684-022) because she cannot work in an assembly group and the ALJ's RFC

precludes her from doing extensive amounts of small, tedious tasks with her hands and fingers as required by the DOT job definition. [Dkt. 16, p. 10]. The RFC and hypothetical question also fully addressed Plaintiff's social limitations including work on an assembly line:

> . . . Work should be kept simple, repetitive, and routine, limiting stress and content, and limited contact with the public, co-workers, and supervisors. If this person is to work on an assembly line, there should be ample room between her and any other co-worker, so she will not have to carry on any social interaction. She can attend shift and team meetings and things of that nature, but she should be working alone or in very limited contact with other people.

[R. 17, 56]. The vocational expert referenced DOT code 706.684-022. In the "People" category, the job identified has a function assignment of "8—Taking Instructions–Helping" with a "S—Significant" rating. As explained at Appendix B to the DOT, "there are nine possible function assignments for the "People" category, and the numbering denotes, from highest (0) to lowest (8), the job's involvement with people. Dictionary of Occupational Titles, App. B—Explanation of Data, People, & Things, 1991 WL 688701. Function assignment 8, "Taking Instructions–Helping," is defined as "[a]ttending to the work assignment instructions or orders of supervisors. (No immediate response required unless clarification of instructions or orders is needed.) Helping applies to "non-learning" helpers. *Id.* The court finds that there is no inconsistency between the DOT and the RFC.

The job of bench assembler identified by the ALJ is described in the *Dictionary of Occupational Titles* (DOT) as follows:

> > Performs any combination of the following repetitive tasks on assembly line to mass produce small products, such as ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table subassemblies, or carburetors: Positions parts in specified relationship to each other, using hands, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand or using handtools or portable powered tools. Frequently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker. Loads and unloads previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, or light metal-cutting operation on assembly line. May be assigned to different work stations as production needs require or shift from one station to another to reduce fatigue factor. May be known according to product assembled.

*Dictionary of Occupational Titles* (4th ed., 1991)(DOT), 706.684-022, 1991 WL 679050, (G.P.O.). The DOT indicates that a bench assembler requires, among other things, a middle degree of motor coordination, finger and manual dexterity. The ALJ specifically addressed Plaintiff's hand limitations in the RFC and the hypothetical question posed to the vocational expert:

> > Q.   . . . A slight limitation in finger, feel and grip, again I place that between continuous and frequent, I'm not saying they can't use their hands, they just shouldn't be doing extensive amounts of small, tedious tasks with their hands and fingers, like pen and clip fastening, working with very small nuts and bolts. They could put their child's bicycle together without any problems but they might have trouble playing with her child's erector set with the small nuts and bolts involved.

[R. 56]. Plaintiff has not demonstrated that the bench assembler job requires greater dexterity than the ALJ's RFC finding.

## Conclusion

The ALJ's decision is REVERSED and the case is REMANDED for the ALJ to analyze Plaintiff's credibility in accordance with the principles set out in *SSR* 96-7p, 1996 WL 374186 (July 2, 1996). The ALJ is required to affirmatively link the credibility findings to substantial evidence.

SO ORDERED this 28th day of February, 2014.

*Frank H. McCarthy*

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE